UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

      v.                                            08-CR-656

SCOTT MILLAR,

                                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Defendant Scott Millar moves to dismiss the indictment or, in the alternative, to suppress certain statement he made to law enforcement.

**I.**    **FACTS**

On March 2, 2004, Defendant was sentenced on his conviction of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8)(A). During the term of his sentence, Defendant was transferred to the Horizon Center, a Community Corrections Center (also known as a halfway house), in Albany, New York. While at the Horizon Center, Defendant was the subject of a disciplinary action. Specifically, Defendant was accused of downloading child pornography onto a computer he had access to at his place of employment, resulting in the termination of his employment.

Following a Bureau of Prisons hearing, Defendant was sanctioned. The sanctions included the loss of good conduct time and a disciplinary transfer, including re-incarceration. The evidence in support of the disciplinary committee's findings included a statement that the Defendant's employer reported finding child pornography on the computer Defendant used at

work. Defendant also was indicted on charges of receiving and possessing child pornography. The basis for the indictment is that Defendant is alleged to have received and/or viewed child pornography on his work computer. This is the same conduct that resulted in Defendant being sanctioned by the Bureau of Prisons.

Presently before Court is Defendant's motion to dismiss the Indictment on the grounds that it violates the Double Jeopardy Clause and, in the alternative, to suppress.

## II.     DISCUSSION

### a.     Double Jeopardy

Defendant contends that the superceding indictment should be dismissed based on the Double Jeopardy Clause of the Fifth Amendment. Defendant argues that he is being punished twice for the same conduct: first because he was sanctioned by the Bureau of Prisons; and second because he is the subject of the instant criminal proceeding.

The Double Jeopardy Clause protects only against the imposition of multiple criminal punishments for the same offense. Hudson v. United States, 522 U.S. 93, 99 (1997). As the Supreme Court explained in Hudson:

> Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. . . .  A court must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. . . . Even in those cases where the legislature has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect . . . as to transform what was clearly intended as a civil remedy into a criminal penalty. . . .
>
> In making this latter determination, the factors listed in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-169, 83 S.Ct. 554, 567-568, 9 L.Ed.2d 644 (1963), provide useful guideposts, including: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6)

> whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. It is important to note, however, that these factors must be considered in relation to the statute on its face . . . and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty. . . .

522 U.S. at 99-100 (internal citations, quotations and alterations omitted).

The sanctions against Defendant were imposed pursuant to 28 C.F.R. §§ 541.10 and 541.20. This Court adopts the Eleventh Circuit's reasoning in United States v. Mayes, 158 F.3d 1215, 1222-23 (11th Cir. 1998), and concludes that these prison disciplinary regulation are civil in nature. Turning to the Kennedy factors, the Court again agrees with the analysis in Mayes and finds that the regulations are civil. Therefore, the instant prosecution does not violate the Double Jeopardy Clause.

The Second Circuit has reached a similar result with respect to discipline in the New York State prison system. In Porter v. Coughlin, 421 F.3d 141 (2d Cir. 2005), the Second Circuit held that discipline resulting in confinement in the prison's special housing unit under New York's prison regulations are civil in nature and do not preclude subsequent prosecutions based on the same conduct. See also United States v. Simpson, 546 F.3d 394 (6th Cir. 2008) (prison disciplinary proceeding resulting in disciplinary segregation, lost of good time, and loss of visitation privileges was civil in nature and did not preclude subsequent prosecution based on the same conduct); United States v. Hernandez-Fundora, 58 F.3d 802 (2d Cir. 1995) (45 days of disciplinary segregation did not constitute punishment for double jeopardy purposes). The Second Circuit noted that:

> The line between civil and criminal sanctions is often hard to draw, and this is nowhere more true than in the context of prisons, where the punitive character of the environment may make even purely regulatory sanctions appear punitive in nature. The need to maintain order, however, is a legitimate nonpunitive interest,

> even if it sometimes requires that prison officials take actions of a punitive character. . . .  We agree with the Eleventh Circuit's observation, in analyzing a similar question, that "[p]rison officials have no authority to alter the inmates' original criminal sentences.  They merely implement disciplinary proceedings that may, at most, change the conditions of the inmates' confinement for purposes of maintaining institutional order and encouraging compliance with prison rules."

Porter, 421 F.3d at 148 (quoting Mays, 158 F.3d at 1224).  The fact that Defendant may have been in a halfway house rather than in prison at the time of his offense does not alter the analysis.  While the result of the sanction (re-incarceration) may seem more severe in light of his having been in a halfway house, the nature of the penalty is not determinative.  The need to maintain order and compliance with prison rules does not dissipate simply because Defendant may have been approaching the end of his sentence and attempts were made to reintegrate him into society.  Arguably, the need to maintain order and compliance with prison rules may be at its height when inmates are intermixed with the general citizenry.

For the foregoing reasons, the motion to dismiss the indictment is DENIED.

### b.  Motion to Suppress

Defendant next seeks to suppress statements made to law enforcement on or about February 4, 2003.  The government concedes that the interview was an interrogation and that Defendant was not advised of his Miranda rights.  The government contends, however, that Defendant was not in custody at the time of the interrogation and, thus, Miranda was not implicated.

According to the memorandum of law submitted by Defendant, he was confronted at his home by at least three officers from three different law enforcement agencies, the FBI, the New York State Police, and the Buffalo Police.  Defendant then suggests that a hearing could elicit other facts in support of his motion.

"Miranda's warning and waiver requirements apply only in the context of 'custodial interrogation,' *i.e.*, a person must have been both in custody and subjected to interrogation for statements made without warnings or waiver to be inadmissible in the governnment's case in chief." United States v. Rommy, 506 F.3d 108, 131-32 (2d Cir. 2007). "Custodial interrogation exists when law enforcement officials question an individual and that questioning was conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and compel him to speak." United States v. Rodriguez, 356 F.3d 254, 258 (2d Cir. 2004) (quoting United States v. Morales, 834 F.2d 35, 38 (2d Cir. 1987)). In determining whether a person is in custody, consideration should be given to whether: (1) a reasonable person would have understood himself to be subjected to restraints comparable to those associated with a formal arrest; and (2) there is indicia that the defendant was not free to leave. United States v. Newton, 369 F.3d 659, 669 (2d Cir. 2004). The test is an objective one. Id.

The fact that the questioning was conducted in Defendant's home weighs against a finding that he was in custody. Newton, 369 F.3d at 675. There is no evidence or allegation of intimidation, the interrogation being conducted at an unusual time, or any other facts suggesting that a reasonable person would have understood himself to be subjected to restraints comparable to those associated with a formal arrest. Because, however, the burden of proving that the Miranda warnings were not required is upon the government and the government has not submitted any affidavits or other evidence concerning the nature and circumstances of the interrogation, the Court will conduct a hearing on this issue prior to trial.

## III. CONCLUSION

For the foregoing reasons, the motion to dismiss the indictment is DENIED. The Court RESERVES decision on the motion to suppress pending a pre-trial suppression hearing.

IT IS SO ORDERED.

Dated: June 17, 2009

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge